IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

RANDY L.,                              )
                                       )
                    Plaintiff,         )
                                       )
        v.                             )        1:25CV100
                                       )
FRANK BISIGNANO,[1]                    )
Commissioner of Social Security,       )
                                       )
                    Defendant.         )

## MEMORANDUM OPINION AND ORDER
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Randy L. ("Plaintiff") brought this action pursuant to Section 205(g) of the

Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a

final decision of the Commissioner of Social Security denying his claim for Disability

Insurance Benefits ("DIB") under Title II of the Act. The parties have filed cross-motions

for judgment, and the administrative record has been certified to the Court for review.

I.      PROCEDURAL HISTORY

Plaintiff protectively filed an application for DIB on February 7, 2022, alleging a

disability onset date of March 8, 2021. (Tr. at 21, 204-05.)[2] Plaintiff's application was denied

initially (Tr. at 85-91) and upon reconsideration (Tr. at 92-100, 109-12.) Thereafter, Plaintiff

---

[1] The United States Senate confirmed Frank Bisignano as the Commissioner of Social Security on May 6, 2025, and he took the oath of office on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #5].

requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 115.) On August 18, 2023, Plaintiff, along with his attorney, attended the subsequent telephone hearing, at which Plaintiff and an impartial vocational expert testified. (Tr. at 21, 42-67.) Following the hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 37), and on December 10, 2024, the Appeals Counsel denied Plaintiff's request for review of that decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-7.)

II.     LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

2

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III.    DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his alleged onset date of March 8, 2021. The ALJ therefore concluded that Plaintiff met his burden at step one of the sequential evaluation process. (Tr. at 24.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> degenerative disc disease with radiculopathy and scoliosis status-post remote microdiscectomy, left hip congenital decreased offset of right superior-lateral femoral head-neck junction with left hip trochanteric bursitis, obesity, and adjustment disorder with anxiety, depression, and insomnia[.]

(Tr. at 24.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 26-28.) Therefore, the ALJ assessed Plaintiff's RFC and determined that he could perform sedentary work with the following additional limitations:

Case 1:25-cv-00100-JEP    Document 11    Filed 03/31/26    Page 5 of 18

[Plaintiff] can sit for six hours in an eight-hour workday. He can frequently reach. He can occasionally climb ramps and stairs, balance (as defined by the Selected Characteristics of Occupations (SCO) of the Dictionary of Occupational Titles (DOT), stoop, kneel, crouch, and crawl. He can never climb ropes, ladders, or scaffolds. He must avoid exposure to hazards (such as unprotected heights and unprotected moving mechanical parts). He must be allowed to use a cane during ambulation. He can understand, remember, and carry out simple instructions. He can work in environments with occasional changes in workplace settings and routines.

(Tr. at 28.) At step four of the analysis, the ALJ determined, based on the above RFC and the vocational expert's testimony, that Plaintiff was unable to perform any of his past relevant work. (Tr. at 34-35.) However, the ALJ found at step five that, given Plaintiff's age, education, work experience, and RFC, along with the testimony of the vocational expert regarding those factors, Plaintiff could perform other jobs available in the national economy and therefore was not disabled under the Act. (Tr. at 36-37.)

Plaintiff now raises two related challenges to the ALJ's decision. First, he contends that "[t]he ALJ erred by failing to perform a function-by-function evaluation of Plaintiff's contested and relevant functions when assessing the RFC." (Pl's Br. [Doc. #8] at 5.) Specifically, Plaintiff argues that the ALJ (1) failed to properly analyze Plaintiff's abilities to sustain positions, particularly sitting, even within the comparatively limited confines of sedentary work, and (2) failed to properly consider whether Plaintiff's symptoms would cause work-preclusive absences. (Pl.'s Br. at 5-15.) Second, Plaintiff contends that "[t]he ALJ violated Albright and AR 00-1(4) in failing to properly evaluate a prior ALJ decision in her own decision." (Pl.'s Br. at 15-18.) In particular, Plaintiff challenges the ALJ's omission of the sit/stand option included in the prior RFC.

6

After a thorough review of the record, the Court agrees that the ALJ's failure to analyze Plaintiff's limitation in prolonged sitting and related need to change positions requires remand. As noted above, Plaintiff contends that, in assessing his RFC, the ALJ erred by failing to perform a function-by-function evaluation of evidence relating to Plaintiff's ability to sit for prolonged periods without changing position, despite evidence suggesting greater limitations. Plaintiff further contends that this failure is exacerbated by the fact that a prior ALJ decision found that Plaintiff required a sit/stand option, but the ALJ here did not include a sit/stand option or any RFC provision addressing the need to change positions, without addressing why this restriction would no longer apply. As discussed below, the Court agrees that in these circumstances, the ALJ's failure to address Plaintiff's ability to sit for prolonged periods without changing positions requires remand.

As Social Security Ruling ("SSR") 96-8p instructs, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis," including the functions listed in the regulations. Social Security Ruling 96-8p: Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "Only after such a function-by-function analysis may an ALJ express RFC in terms of the exertional levels of work." Monroe v. Colvin, No. 15-1098, 2016 WL 3349355, at *9 (4th Cir. June 16, 2016) (internal quotations and citations omitted). Further, the "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7. An ALJ must "both identify

7

evidence that supports his conclusion and 'build an accurate and logical bridge from [that] evidence to his conclusion.'" Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (emphasis omitted) (quoting Monroe, 826 F.3d at 189).

The Fourth Circuit has noted that a *per se* rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Mascio, 780 F.3d at 636 (quoting Cichocki, 729 F.3d at 177). The court in Mascio concluded that remand was appropriate because it was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did not address. Mascio, 780 F.3d at 637.

Here, counsel for Plaintiff argued at the hearing that, due to back pain and other impairments, Plaintiff "is limited to less than sedentary exertion, is required to change positions such that he would be off-task to a disabling extent, and would miss work to a disabling extent." (Tr. at 29.) Specifically, counsel noted that Plaintiff's low back pain "limits him in his sitting" and that Plaintiff's "severe and debilitating chronic back pain precludes even sedentary work" because "[h]e would need a sit/stand option with such frequency that he

would be unable to remain on task with competitive employment." (Tr. at 46, 47.)  The ALJ expressly found based on the underlying evidence, that Plaintiff did not "need[] to shift positions to an extent that he would be off-task or absent to a disabling extent." (Tr. at 33 (emphasis added).)  However, the ALJ failed to take the next logical step and explain to what extent Plaintiff did require position changes (even if they would not take him off task), or if he required no position changes, why.  (Tr. at 33.)

Plaintiff's ability to sit for extended periods, totaling up to 6 hours in an 8-hour workday, is directly at issue in this case.  Plaintiff testified that he "can't sit for very long at all" and that he "can sit for about five to ten minutes and then [has] to get up and move around." (Tr. at 51.)  Indeed, throughout the application process, Plaintiff repeatedly explained that he couldn't sit (Tr. at 243), that he was "not able to sit" for long periods of time (Tr. at 246), that if he "sit[s] long back hurts leg go numb" (Tr. at 251), and that he is "[u]nable to sit for prolonged periods" (Tr. at 269.)  In a Third Party Function Report completed by Plaintiff's friend Jeff Jones, Mr. Jones stated that, "I have seen him be unable to walk long distances and unable to sit for long periods of time." (Tr at 259.)  Plaintiff also repeatedly reported to his medical providers that his pain was worse with sitting (Tr. at 356, 466, 586, 711, 1030).

In the decision, the ALJ conceded that Plaintiff experienced pain while sitting, concluding that "it is clear that [Plaintiff] experiences discomfort in any position" and that his discomfort "reduces his functional capacity." (Tr. at 33.)  In making this finding, the ALJ relied, in part, on the opinions of Dr. Drew Kiraly,[5] who noted during an April 20, 2023

---

[5] In what clearly amounts to a scrivener's error, the ALJ mistakenly attributed Dr. Kiraly's statements to "Dr. Kirby." (Compare Tr. at 33 with Tr. at 1030.)

evaluation that Plaintiff experienced "pain with difficulty standing, <u>sitting</u>, or walking for an extended period of time or to find [sic] a comfortable position." (Tr. at 33 (emphasis added)) (citing Tr. at 1030). Plaintiff found Dr. Kiraly's assessment persuasive. (Tr. at 33.) Plaintiff's physical therapists similarly noted that "[p]ain prevents sitting more than ½ hour" (Tr. at 467, 587), that he had "[d]ifficulty with prolonged sitting" (Tr. at 469, 589), and that he "sits with a significant shift to the right" and has "difficulty with sitting." (Tr. at 588.) However, the ALJ did not address Plaintiff's difficulty with sitting or explain how these opinions and findings were consistent with an RFC with no limitations on sitting.

The ALJ also relied on the similar findings of consultative examiner Dr. Stephen Burgess, who opined in November 2022 that Plaintiff "continues to have limitations even with day-to-day activities of any kind whether requiring standing, <u>sitting</u>, or lying down." (Tr. at 33 (emphasis added)) (quoting Tr. at 504). Dr. Burgess noted that Plaintiff "can sit for half an hour or so, sometimes a little longer but has to place weight predominantly over the right hip," and Dr. Burgess explained that Plaintiff's MRI showed "compression of the exiting L5 nerve root, which is consistent with his pain." (Tr. at 500.) Dr. Burgess also noted objective findings upon examination, including positive straight leg raise tests and tenderness of the lumbar spine (Tr. at 500, 503). In addition, Dr. Burgess specifically observed that Plaintiff did not appear comfortable when sitting, and "has to sit with weight borne over the right hip" (Tr. at 502). The ALJ found that Dr. Burgess' opinion was persuasive. (Tr. at 33.) Although the ALJ went on to assert that Dr. Burgess' opined "limitations are accounted for more specifically in the above [RFC]" (Tr. at 33), the RFC does not, in fact, contain any restrictions on Plaintiff's ability to sit.

Elsewhere in her decision, the ALJ states that Plaintiff has experienced limiting spinal issues for many years, including surgery in 2001, prior to further injuring his back in 2021. (Tr. at 31-34.) MRI results from November 2021 showed a disc bulge at L4-5 with a tear of the annulus (Tr. at 31, 351), and a follow-up MRI dated April 5, 2022 also indicated compression of the descending left L5 nerve root (Tr. at 31, 403, 697). The ALJ noted that additional surgical intervention was not recommended. (Tr. at 31.) As explained by Dr. Michaux Kilpatrick, a neurosurgeon who evaluated Plaintiff in November 2022, Plaintiff received epidural lumbar steroid injections in both March and May of that year, but the treatment resulted in no relief. (Tr. at 696.) Plaintiff was subsequently referred to Neurosurgery at Wake Forest Baptist Health, where it was determined that he was not a surgical candidate. (Tr. at 696, 455.) Plaintiff went to Dr. Kilpatrick for a second opinion, and Dr. Kilpatrick agreed that "the risks of surgery would outweigh any benefits, as surgical intervention [was] not likely to resolve [Plaintiff's] chronic low back and global left leg syndrome." (Tr. at 696.) Notably, Dr. Kilpatrick noted that imaging showed facet arthropathy with irritation of the left L5 nerve root and concern for potential left hip pathology, and examination reflected palpable pain, decreased range of motion, and decreased sensation, but those issues could not be addressed with anatomical correction surgery. (Tr. at 696-97, 699.) Instead, Dr. Kilpatrick recommended that Plaintiff (1) continue his ongoing treatment with Atrium WFBH Pain Clinic, (2) undergo evaluation to become part of a spinal cord stimulator trial, and (2) potentially obtain x-rays of his left hip to ensure that his symptoms were not due, at least in part, to underlying hip pathology. (Tr. at 696.) In a subsequent summary, Plaintiff's long-time treating physician, Dr. Arnold, explained that Plaintiff had been in "unrelenting pain" for two

11

years, that Plaintiff has seen two surgeons who agreed that surgery likely would not provide relief, and that Plaintiff was therefore going to have a spinal cord stimulator implanted. (Tr. at 1048.) Dr. Arnold and Dr. Kilpatrick, like Dr. Burgess, also observed that Plaintiff was "unable to sit on his left side" and sat "leaning on his right hip because of pain in his left back" and was "clearly uncomfortable" and "cannot sit straight in the chair." (Tr. at 391, 697, 498, 1048.)[6]

Despite crediting the findings of Drs. Burgess, Arnold, and Kiraly, the ALJ did not include any limitations on sitting when formulating Plaintiff's RFC. By omitting any explanation for this omission, the Court cannot trace the ALJ's reasoning or determine what the ALJ found or if there is substantial evidence in support. In <u>Dowling v. Comm'r of Soc. Sec. Admin.</u>, 986 F.3d 377 (4th Cir. 2021), the Fourth Circuit held that where, as here, a plaintiff's ability to sit is contested, the ALJ must include an analysis of this function in her decision. In <u>Dowling</u>,

> Appellant . . . argued throughout her administrative and judicial proceedings that her IBD and anal fissure cause her to experience discomfort when she sits for a prolonged period of time. But the ALJ apparently concluded that Appellant was not restricted in her ability to sit, as he did not indicate that her RFC was limited because of those problems. This conclusion should have been the result of an analysis that was separate from the ALJ's appraisal of Appellant's ability to perform other functions, and should have been accompanied by "a narrative discussion describing" the evidence supporting it. . . . The ALJ's evaluation of Appellant's ability to sit was lacking in both respects. The ALJ never specifically discussed the extent to which Appellant's alleged sitting problems impacted her ability to perform sedentary work. The ALJ could not have supported a conclusion in this regard through a narrative discussion concerning the relevant evidence because he reached no such express conclusion in the first instance. In fact, the ALJ barely mentioned Appellant's

---

[6] Plaintiff's treating physician Dr. Arnold also provided a letter to the Appeals Council after the ALJ's decision, opinion that it would be impossible for Plaintiff to work on a continuous basis for 8 hours a day, and that "[e]ven sitting sedentary, he would be uncomfortable continuously." (Tr. at 17.)

sitting problems in his decision, and discussed them only when rattling off a laundry list of her many impairments and functional restrictions. This grouping of Appellant's sitting limitations with her other impairments and restrictions is a far cry from the "function-by-function analysis" the ALJ was required to conduct.

Dowling, 986 F.3d at 388.

Here, as in Dowling, the ALJ failed to perform a material analysis of Plaintiff's ability to sit, and "the ALJ included no restrictions on [Plaintiff's] ability to sit in the RFC despite admitting that he had trouble sustaining any position for a prolonged period of time due to pain exacerbation." (Pl's Br. at 11.) As noted above, the ALJ did reject Plaintiff's contention that he would be off task more than 10% of the day due to position changes. (Tr. at 33.) However, again, this left unresolved and unaddressed the question of whether the ALJ concluded that (1) no position changes were necessary and that Plaintiff could sit for prolonged periods without limitation (and what evidence the ALJ relied on to support that conclusion); or alternatively, (2) whether the ALJ concluded that some position changing was necessary due to the record evidence regarding Plaintiff's inability to sit for prolonged periods, but that position changing would not take Plaintiff off task; or as yet another alternative, (3) whether the ALJ concluded that position changing was necessary but at intervals of 30 or 60 minutes that might briefly take Plaintiff off task but not more than 10% of the day.[7] Because the ALJ did not address or discuss these issues, the Court cannot follow

---

[7] Of course, if it were either of the latter two alternatives, those limitations would need to be reflected in the RFC, which did not happen here. See Social Security Ruling 96-9p: Policy Interpretation Ruling Titles II and XVI: Determining Capability to Do Other Work—Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work, SSR 96-9p, 1996 WL 374185, at *6-7 (July 2, 1996) (emphasis added):

> **Sitting:** In order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals. If an

the ALJ's analysis or understand how the ALJ resolved the evidence regarding Plaintiff's limitations on prolonged sitting. Because it is the duty of the ALJ, not the Court, to resolve these evidentiary issues in the first instance, and to obtain supporting vocational expert testimony as applicable, this case requires remand.

Moreover, Plaintiff's second, related challenge further supports this concern. Specifically, Plaintiff contends that the ALJ failed to properly address Plaintiff's need for a sit/stand option that was included in a prior, final decision of the Commissioner, dated March 27, 2009, when assessing Plaintiff's RFC in the present case. See Lively v. Sec. of Health & Human Servs., 820 F.2d 1391, 1392 (4th Cir. 1987) (noting that res judicata applies to Social Security disability cases and "prevents reappraisal of both the Secretary's findings and his decision in Social Security cases that have become final"); Albright v. Comm'r of Soc. Sec. Admin., 174 F.3d 473, 477-78 (4th Cir. 1999) ("To have held otherwise would have thwarted the legitimate expectations of claimants—and, indeed, society at large—that final agency

---

individual is unable to sit for a total of 6 hours in an 8-hour work day, the unskilled sedentary occupational base will be eroded. . . .

**Alternate sitting and standing:** An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing.

Alternatively, if the ALJ concluded that no position changes were necessary and that Plaintiff could sit for prolonged periods without limitation, some explanation is needed. As discussed above, the ALJ stated that "finding restrictions of the severity alleged by [Plaintiff], such as needing to shift positions to an extent that he would be off-task or absent to a disabling extent are not consistent with the physical examination findings discussed hereinabove." (Tr. at 33.) In addition to being unclear as to what extent Plaintiff did require position changes (even if they would not take him off task), it is also unclear how a requirement for position changes was "not consistent with the physical examination findings," given the consistent evidence in the treatment records regarding Plaintiff's difficulty with prolonged sitting and discomfort while sitting, discussed above. All of those issues are best addressed by the ALJ in the first instance.

adjudications should carry considerable weight."). In <u>Albright</u>, the Fourth Circuit explained that

> the result in <u>Lively</u> is . . . best understood as a practical illustration of the substantial evidence rule. In other words, we determined that the finding of a qualified and disinterested tribunal that Lively was capable of performing only light work as of a certain date was such an important and probative fact as to render the subsequent finding to the contrary unsupported by substantial evidence.

<u>Albright</u>, 174 F.3d at 477-78.

These decisions are reflected in Acquiescence Ruling 00-1(4), which provides that "where a final decision of SSA after a hearing on a prior disability claim contains a finding required at a step in the sequential evaluation process for determining disability, SSA must consider such finding as evidence and give it appropriate weight in light of all relevant facts and circumstances when adjudicating a subsequent disability claim involving an unadjudicated period." Acquiescence Ruling 00-1(4), <u>(Interpreting <i>Lively v. Secretary of Health and Human Services</i>)—Effect of Prior Disability Findings on Adjudication of a Subsequent Disability Claim—Titles II and XVI of the Social Security Act</u>, 65 Fed. Reg. 1936, 38, 2000 WL 43774, at *4 (Jan. 12, 2000). The Social Security Administration issued Acquiescence Ruling 00-1(4) following the <u>Lively</u> and <u>Albright</u> decisions, promulgating the procedure an adjudicator must follow when there is a final decision by the ALJ or Appeals Council in a prior disability claim:

> When adjudicating a subsequent disability claim arising under the same or a different title of the Act as the prior claim, an adjudicator determining whether a claimant is disabled during a previously unadjudicated period must consider such a prior finding as evidence and give it appropriate weight in light of all relevant facts and circumstances. In determining the weight to be given such a prior finding, an adjudicator will consider such factors as: (1) whether the fact on which the prior finding was based in subject to change with the passage of time, such as a fact relating to the severity of a claimant's medical condition; (2) the likelihood of such a change, considering the length of time that has elapsed

between the period previously adjudicated and the period being adjudicated in the subsequent claim; and (3) the extent that evidence not considered in the final decision on the prior claim provides a basis for making a different findings with respect to the period being adjudicated in the subsequent claim.

AR 00-1(4), 2000 WL 43774, at *4. In Plaintiff's case, in the prior 2009 decision, the ALJ found severe impairments based on "lower back pain, left leg, and foot pain." (Tr. at 73). The ALJ assessed an RFC limiting Plaintiff to light work, but further found that Plaintiff:

could not climb ladders or scaffolds; was capable of only occasional bending, stooping, pushing, and pulling with the arms; and required a sit/stand option.

(Tr. at 73 (emphasis added).) That decision noted that: Plaintiff testified that "sitting . . . made his pain worse" (Tr. at 74), that Plaintiff's treatment records showed that "his symptoms are worsened with sitting" (Tr. at 75), and that treatment records reflected that Plaintiff "needed a job where he could have frequent position changes along with no heavy lifting with his back" (Tr. at 75). Therefore, the RFC limited Plaintiff to light work with "a sit/stand option," but concluded that based on that RFC Plaintiff was not disabled for the period at issue.

In assessing this prior decision, the ALJ clearly understood the obligation under Albright and AR 00-1(4) and made thorough findings at each step. (Tr. at 21-22, 25.) However, the ALJ did not provide any basis for reducing the limitations from the 2009 decision or removing the sit/stand option. Instead, the ALJ explained that she based her deviation from the prior RFC on evidence demonstrating that (1) Plaintiff's back condition worsened with his second work injury in March 2021, and (2) "mental health conditions arose necessitating additional restrictions." (Tr. at 34.) The ALJ specifically found that Plaintiff now has "additional limitations" in his RFC based on his worsening condition (Tr. at 34), but

16

the ALJ did not explain or address any <u>reduction</u> in limitations with respect to the sit/stand option. The ALJ's reduction of Plaintiff's exertional capacity from light to sedentary does nothing to remedy her omission. Again, Plaintiff repeatedly testified that he experienced increased pain with prolonged sitting. The ALJ conceded that "it is clear that [Plaintiff] experiences discomfort in any position" and that this discomfort "reduces his functional capacity" (Tr. at 33), yet in altering Plaintiff's RFC from the 2009 decision, the ALJ failed to include the sole restriction addressing Plaintiff's limited ability to sit.

Thus, in this case:

• A prior ALJ concluded that Plaintiff required a sit/stand option based on Plaintiff's need to change positions and his worsening pain with prolonged sitting.

• Plaintiff repeatedly explained in his testimony, in his application, and to his providers that he could not sit for prolonged periods and that sitting worsened his pain.

• Plaintiff's treating physicians observed Plaintiff's discomfort and inability to sit, and his treatment records reflect that he could not sit longer than 30 minutes at a time.

• The Consultative Examiner concluded that Plaintiff was limited in his ability to sit, that he could not sit for more than half an hour, and that objective examination and imaging confirmed Plaintiff's impairments, including compression of the L5 nerve root "which is consistent with his pain."

Despite this evidence in the record, the ALJ did not provide any explanation for removing the prior sit/stand option, and the ALJ did not provide any analysis regarding Plaintiff's ability to sit for extended periods. In the circumstances, remand is required, so that the ALJ can provide sufficient explanation to allow the Court to follow the ALJ's reasoning and determine if substantial evidence supports the conclusion.

IT IS THEREFORE ORDERED that the Commissioner's decision finding of no disability is REVERSED, and that the matter is REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). To this extent, it is further ORDERED that Defendant's Dispositive Brief [Doc. #10] is DENIED, and Plaintiff's Dispositive Brief [Doc. #8] is GRANTED to the extent set forth herein.

This, the 31st day of March, 2026.

_____
Joi Elizabeth Peake
United States Magistrate Judge